THE WESTERN LOAN & SAVINGS COMPANY, a
Corporation, Respondent, v. LOUIS GARFF and
AMELIA SINGLETON GARFF, Appellants.

### No. 1493.    (75 Pac. 375.)

Building and Loan Associations: Members: Right:
Mortgage: Foreclosure.
Where a party subscribed for stock in a building asso-
ciation, which he pledged to secure a loan, and thereafter made
payments on the stock, and the loan association took no steps
to foreclose its lien thereon for nonpayment of the loan, or in
any way to apply the stock to the payment thereof, it was not
entitled to contend that the issuance of the stock was a mere de-
vice to obscure the real transaction, and that the subscriber was
not a member of the association.[1]

**2.** Same: Pleading: Counterclaim: Failure to Reply.
Where, in an action to foreclose a real estate mortgage by a build-
ing association, defendant filed a counterclaim for the value
of his stock in the association, which he had pledged to
secure the loan, and alleged that it was agreed between plaintiff
and defendant that by the time the principal note should ma-
ture the stock so subscribed and paid for would be worth par,
and would be as cash, and the note paid out of the proceeds, and
any balance paid to defendant, and plaintiff's reply did not deny
such allegations, and the plaintiff retained the stock and the
accumulations as its own under a claim that defendant never
owned or had any rights in the same, defendant was entitled
to recover the difference between the principal of the note and
the value of the stock and its accumulations.

(Decided February 5, 1904.)

Appeal from the Fourth District Court, Utah County.—
Hon. J. E. Booth, Judge.

[1]Howells v. Pacific States Saving Co., 21 Utah 45, 60 Pac. 1025,
distinguished.

Action to foreclose a trust deed on real estate. From a judgment in favor of the plaintiff, the defendants appealed.

REVERSED.

*J. W. N. Whitecotton, Esq.*, for appellants.

*Messrs. Price & McCrea* and *William H. King, Esq.*, for respondent.

BASKIN, C. J.—The following facts were found by the trial judge, and are not controverted by either of the parties, viz.: On the twenty-first day of July, 1892, the defendant Louis Garff executed and delivered to the plaintiff his promissory note for $1,600, payable on the sixteenth day of July, 1899, with interest thereon, payable monthly from date, at the rate of $12.50 per month; and on the same day, for the purpose of securing the payment of said note and interest, the said Louis Garff and his codefendant executed and delivered to plaintiff a deed of trust on certain real estate; that on or about the eleventh day of July, 1892, the defendant Louis Garff subscribed for and bought of the plaintiff twenty-four shares of Class A general stock of said plaintiff, as evidenced by certificate No. 260, in accordance with the rules, by-laws, and regulations of said plaintiff, at the agreed and guaranteed maximum cost and price of $50.40 per share to be paid for by said Louis Garff at the rate of 60 cents a month per share, for the period of eighty-four months; that afterwards the said Garff, as required by the terms of said purchase, paid in monthly installments to the plaintiff $1,209.60, and that the amount so paid was the full purchase price of the twenty-four shares of stock; that the stock, at the time the note was given, was, upon the demand of the plaintiff, assigned to it by the said Louis Garff as collateral security for the payment of the note and interest; that the said Garff paid all the interest on

the note as it became due, up to and including July 21, 1899; that at the maturity of the note, the plaintiff applied the $1,209.60 paid for the stock as part payment of the principal ($1,600) due upon the note, but the said Garff never authorized the sum paid as the purchase price of the stock to be so applied; that on the 1st day of July, 1899, the twenty-four shares of stock, with the accumulated earnings thereon, were, as shown by the books of the plaintiff, worth $1,719.78; that the plaintiff has taken no steps to foreclose its lien upon the stock, or in any way to apply the stock to the payment of the said Garff's indebtedness. The plaintiff, on the 1st day of May, 1902, instituted this action to foreclose the trust deed and obtain a decree directing the sale of the real estate described in the trust deed, or so much thereof as necessary to satisfy the judgment for $558.10 rendered against the defendant on the note secured by the trust deed after the payment of costs and an attorneys' fee of $50.

The contention of the respondent, as stated in its brief, is as follows: "Garff assigned and transferred absolutely to respondent the twenty-four shares of stock he subscribed for, and, as this court has held that the stock was a mere device to obscure the real transaction, and issued simply to induce the appellant Garff to believe that by subscribing for the stock he would derive a benefit other than the advancement of the loan, there was nothing in which Garff had any interest which respondent could exhaust. Then, too, Garff was not a stockholder, did not own the stock, and it would be a mere play upon time to compel the respondent to go through the form of selling stock in which Garff had no interest." In view of the well-settled rule of law that no one is permitted to take advantage of his own wrong, this statement is remarkable. The case of Howells v. Pacific States Savings, etc., Co., 21 Utah 45, 60 Pac. 1025, 81 Am. St. Rep. 659, is cited as supporting the respondent's contention. In that case the defendant was, in terms, required, when all of the

stipulated payments were made, to surrender to the company the stock subscribed for and assigned to it in payment of the loan.    There is an absence of any such requirement in the pending case.    It is clear from the facts found that the said Garff purchased the twenty-four shares of stock, and at the time it was assigned by him he was the owner thereof; that the $1,209.60 credited on the note was paid by him as the purchase price of the stock, and not as a partial payment on the note; and that the stock was assigned to the plaintiff merely as collateral security.

The defendant Garff, in his answer, set up a counterclaim for $119.78, that sum being the difference between the principal of the note and the value of the stock with accumulated earnings found by the court.    The following material allegations in the counterclaim are not denied by the plaintiff's reply, viz.: "That it was further agreed and understood mutually by and between the plaintiff and the defendant Louis Garff, at the time of executing said note and mortgage, that by the time said principal note should mature the said stock so being paid for at the rate of sixty cents a share per month would be worth par value of $100 per share, and that the same could be cashed to the plaintiff by the defendant, and the said note paid in full out of the proceeds, and the balance paid to the defendant."    The plaintiff having failed to deny these specific allegations, they must be taken as true, and no findings respecting the same are required.    In view of the failure to deny these allegations, and that the plaintiff retains the stock and the accumulations thereof as its own, and under the claim that the defendant never owned or had any rights in the same, the defendant is entitled to recover the difference between the principal of the note and the value of the stock and its accumulations.

It follows that the decree of foreclosure and the judgment for $558.10 and the award of attorney's fees are erroneous.    It is therefore ordered that they be reversed, with costs, and the case remanded, with direc-

tions to the court below to render judgment in favor of defendant, for the difference between the value of the stock and the accumulations thereof, specified in the findings of fact, with interest thereon from the maturity of the note.

BARTCH and McCARTY, JJ., concur.